DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pwfirm.com
NAVEED ABAIE (Bar No. 323338)
  nabaie@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

JILL M. MANNING (Bar No. 178849)
  jmanning@pwfirm.com
**PEARSON WARSHAW, LLP**
555 Montgomery St., Suite 1205
San Francisco, California 94111
Telephone:  (415) 433-9000

BENJAMIN GUBERNICK (Bar No. 321883)
  ben@gubernicklaw.com
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd., Suite 19, PMB 12
Phoenix, Arizona 85037
Telephone:  (623) 252-6961

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CARLTON DAVENPORT and QUANG HO, Individually and on Behalf of All Others Similarly Situated, | CASE NO. |
| Plaintiffs, | **CLASS ACTION** |
| v. | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| NVIDIA Corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Plaintiffs Carlton Davenport and Quang Ho ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against defendant NVIDIA Corporation ("NVIDIA" or "Defendant"), and allege on personal knowledge as to their own acts and experiences, and on information and belief as to all other matters, the following:

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of NVIDIA Shield TV, Shield TV Pro, and Shield K1 Tablet devices ("Shield devices").[1] These Shield devices contained the GameStream feature, which allowed owners to stream games to their television ("TV") from a personal computer ("PC") at up to 60 frames per second in 4K resolution,[2] and offered the feature as a part of the Nvidia Games Android TV application.[3] The gravamen of this action is that Defendant advertised, marketed and sold Shield devices as including the GameStream feature, but subsequently disabled access to the feature, thus depriving Plaintiffs and Class Members of a feature they paid for and impairing the use, functionality and value of Shield devices.

2.      Defendant unveiled NVIDIA Shield, its first end-to-end consumer product, in January of 2013.[4] GameStream was a feature included in Shield devices ever since 2013.[5]

3.      In October of 2013, Defendant announced that the GameStream feature enabled individuals to stream games in 4K resolution from a PC containing a NVIDIA GeForce® GTX graphics card to their TV.[6]

4.      On December 16, 2022, Defendant issued an "End of Service Notification"[7] warning Shield device owners that, "GameStream may continue to work for a time, but will no

---

[1] www.nvidia.com/en-us/shield/support/shield-tv/gamestream/

[2] *Id.*

[3] www.pcmag.com/news/nvidia-reportedly-drops-shield-tv-support-for-gamestream

[4] www.engadget.com/2014-07-22-nvidia-shield-tablet.html

[5] www.theverge.com/2022/12/19/23516370/nvidia-gamestream-feature-shield-devices-end-of-support

[6] www.engadget.com/2013-10-18-nvidia-montreal-2013-1.html

[7] https://nvidia.custhelp.com/app/answers/detail/a_id/5436/~/gamestream-end-of-service-notification; www.makeuseof.com/what-happening-nvidia-gamestream/

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  longer be supported and eventually will stop working."[8]

2    5.    On March 29, 2023, Defendant intentionally forced an update to all Shield devices

3  removing the GameStream feature on all Shield devices.[9] Thereafter, all owners of Shield devices

4  lost access to the core feature they paid for.

5    6.    Defendant promoted two alternative methods for streaming games once

6  GameStream became unavailable: (1) Valve Corporation's Steam Link ("Steam Link") application,

7  and (2) NVIDIA's GeForce NOW service.[10]

8    7.    Steam Link is not an adequate substitute for GameStream. Games streamed over

9  Steam Link have high latency, which is undesirable to gamers.[11] GameStream, by contrast, allowed

10 Shield owners to stream any games they played on their PCs at 4K 60 Hz, with low latency.[12]

11    8.    GeForce Now is not an adequate substitute for GameStream. While NVIDIA

12 GeForce NOW allows Shield owners to stream PC games from the cloud, these sessions are time-

13 limited, and, at the time of this filing, cost $20 per month to stream in 4K resolution.[13]

14    9.    Thus, neither alternative is suitable, and NVIDIA's conduct has forced Plaintiffs

15 into an untenable position: to use the inferior Steam Link service exclusively and/or pay for

16 NVIDIA's GeForce NOW cloud-based service to receive similar stream quality.

17    10.    Plaintiffs bring this action individually and on behalf of all others similarly situated

18 who purchased Shield devices nationwide containing the GameStream feature and subsequently

19 lost access to the feature. Plaintiffs allege trespass to chattels, breach of the implied warranty of

20 fitness for a particular purpose, and violations of (a) California's Unfair Competition Law, Cal.

21 Bus. & Prof. Code §§17200, et seq. (the "UCL"), (b) California Consumers Legal Remedies Act,

22

23  [8] *Id.*

24  [9] https://9to5google.com/2023/03/29/shield-tv-gamestream-removal/

25  [10] https://nvidia.custhelp.com/app/answers/detail/a_id/5436/~/gamestream-end-of-service-notification

26  [11] www.theverge.com/2022/12/25/23524514/valve-original-steam-link-discontinued-app-latency-bug

27  [12] www.digitaltrends.com/gaming/nvidia-kills-gamestream-shield/

28  [13] www.makeuseof.com/nvidia-geforce-now-bringing-4k-streaming-to-pc-windows-mac-gamers/

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Cal. Civ. §§ 1750 et seq. ("CLRA"), and (c) state consumer protection statutes, and seek damages and equitable relief.

## THE PARTIES

11.     Plaintiff Carlton Davenport is a citizen of New Mexico and resides in Doña Ana County, New Mexico. In 2022, he purchased a Shield device at a Best Buy store in Las Cruces, New Mexico. He purchased the device for his personal use so he could stream games from his desktop computer to his television using the Shield's GameStream feature.

12.     Plaintiff Quang Ho is a citizen of California and resides in San Bernardino County, California. In 2020, he purchased two Shield devices, on two separate occasions, at a Best Buy store located in Chino Hills, California. He purchased both devices for his personal use so he could stream games from his desktop computer to his television using the Shield devices' GameStream feature.

13.     NVIDIA is a Delaware corporation with its principal place of business in Santa Clara, California. NVIDIA has a reach across several industries including graphics, gaming, supercomputing, autonomous driving, machine learning, the metaverse, artificial intelligence, robotics, and automotive. NVIDIA products include, but are not limited to, their Shield devices. In addition to being headquartered and having its principal place of business in Santa Clara, California, NVIDIA transacts substantial business throughout the State of California and within this District. Further, substantially all of the misconduct alleged in this Complaint occurred in and/or emanated from California.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendant; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000. This Court has personal jurisdiction over the parties because Defendant conducts substantial business in this State, has had systematic and continuous contacts with this State, and has agents and representatives that can be found in this State.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

15.    Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred within this District, and Defendant maintains its headquarters in this District.

### INTRADISTRICT ASSIGNMENT

16.    Assignment to the San Jose division of this district is appropriate under Civil Local Rule 3-2 because a substantial part of the events or omissions which give rise to the claims occurred within the jurisdiction of the San Jose division.

### SUBSTANTIVE ALLEGATIONS

17.    Defendant unveiled its first end-to-end consumer product, NVIDIA Shield, in January of 2013.

18.    In October of 2013, Defendant announced GameStream. Shield devices containing the GameStream feature allowed Shield owners to stream games to their TV from a PC at up to 60 frames per second at 4K resolution, and enabled users to wirelessly play their PC games on their Shield device.[14] Defendant offered the feature as a part of the Nvidia Games Android TV application.



19.    Since it first introduced the NVIDA Shield, Defendant has gone to great lengths to promote the benefits of its GameStream functionality. Defendant has described its GameStream technology as "using GeForce Experience to optimize game settings to deliver a seamless out-of-

---

[14] https://hothardware.com/news/nvidia-shield-pulling-plug-on-gamestream-feature

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

the-box experience."[15]



20.     Plaintiffs purchased Shield devices at a price premium compared to similar products that lack features equivalent to GameStream. With the GameStream feature as a key selling point, retailers priced the NVIDIA Shield TV in the range of $129.99 to $149.99 and the Shield TV Pro at $179.99 to $199.99.[16] In comparison, the Roku Ultra, which Roku has touted as its most powerful Roku player ever, lacks the ability the stream PC games at 4K 60 Hz, and is $100 less expensive than the Shield TV Pro.[17]

21.     Despite the steep price tag, Plaintiffs chose to pay the premium because they wanted access to the Shield devices' GameStream feature. Users were very impressed with this feature and expressed their excitement in public forums, including Reddit. As one GameStream review article explained, Defendant's GameStream feature was particularly attractive to PC gamers who had large collections of games: "One of the nicest things about GameStream is the price: it's free. Since you're streaming games you own to devices you own from a PC you own, there's really nothing to charge for, after all. If your PC has everything it needs, setting up GameStream is pretty much a no-brainer: GeForce Experience handles all the heavy lifting for you. From there, you can stream

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

---

[15] www.nvidia.com/en-us/support/gamestream/how-gamestream-works/

[16] https://store.nvidia.com/en-us/shield/

[17] www.roku.com/products/roku-ultra

1    your PC games pretty much anywhere you are: in the living room, bedroom, Starbucks, or

2    anywhere else there's Wi-Fi."[18]



18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

28    [18] www.howtogeek.com/294002/nvidia-gamestream-vs.-geforce-now-whats-the-difference/

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403



22.     In December 2022, Defendant announced that it would roll out an update in mid-February 2023 that would remove GameStream from the NVIDIA Games application.[19] Defendant also published an "End of Service Notification" on its website warning Shield owners that if they chose to ignore the February 2023 update, GameStream might continue to work for a time but that it would eventually stop working.[20] Moreover, numerous other Shield other features would be disabled until the Update was downloaded.

/ / /

/ / /

/ / /

---

[19] www.digitaltrends.com/gaming/nvidia-kills-gamestream-shield/

[20] https://nvidia.custhelp.com/app/answers/detail/a_id/5436/~/gamestream-end-of-service-notification

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

23.     Not surprisingly, the reaction to NVIDIA's notification was prompt and vociferous.



24.     In fact, a petition entitled "Nvidia: Revert decision to shutdown GameStream."[21] was started on Change.org that, as of this filing, has 4,120 signatures. The comments explain the importance of the GameStream feature to Shield device owners:

- "It is outrageous that Nvidia would remove a core feature with no justification whatsoever. Very shameful and disappointing."

- "We paid for this service for the entire supported liketime [sic]of the product. Removing it is performing a bait and switch on expensive consumer electronics."

- "Nvidia scammed us."[22]

25.     Defendant promoted two alternative methods for Shield owners to stream games when they no longer have access to GameStream: (1) Valve Corporation's Steam Link service, and (2) NVIDIA's GeForce NOW service.[23] However, neither alternative is a suitable replacement for

---

[21] www.change.org/p/nvidia-nvidia-revert-decision-to-shutdown-gamestream

[22] *Id.*

[23] *Id.*

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    GameStream.

2        26.     Games streamed over Steam Link have high latency, which is undesirable to

3    gamers.[24] GameStream, by contrast, allowed Shield owners to stream any games they played on

4    their PCs at 4K 60 Hz, with low latency.[25]

5        27.     Shield owners complained about Steam Link's streaming quality and support.



23        28.     Although NVIDIA GeForce NOW allows Shield owners to stream PC games from

24    the cloud, these sessions are time-limited, and, at the time of this filing, cost approximately $20 per

27    [24] www.theverge.com/2022/12/25/23524514/valve-original-steam-link-discontinued-app-latency-bug

28    [25] www.digitaltrends.com/gaming/nvidia-kills-gamestream-shield/

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  month to stream at 4K resolution.[26]

2      29.    On March 29, 2023, Defendant intentionally forced an update to all Shield devices

3  that disabled the GameStream feature.[27] Thereafter, Shield owners lost access to the core

4  advertised, promoted feature that they purchased. As expected, the public's reaction to the March

5  update was vehement.



**CLASS ACTION ALLEGATIONS**

17      30.    Plaintiffs bring this suit as a class action pursuant to Rule 23 of the Federal Rules of

18  Civil Procedure, on behalf of themselves and all other similarly situated persons. The Nationwide

19  Class is defined as:

> **All persons who purchased, in the United States and its territories, new Shield devices with the GameStream feature and who continued to own them on March 29, 2023.**

22      31.    Plaintiffs bring this action as a class action on behalf of themselves and all others

23  similarly situated pursuant to state consumer protection laws. The Multi-State Class is defined as:

> **All persons who purchased, in the State of California or any state with similar laws,[28]**

---

[26] www.makeuseof.com/nvidia-geforce-now-bringing-4k-streaming-to-pc-windows-mac-gamers/

[27] https://9to5google.com/2023/03/29/shield-tv-gamestream-removal/

[28] While discovery may alter the following, Plaintiffs assert that the other states with similar consumer protection laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code §§ 4-88-101, et seq.); California (Cal. Bus. & Prof. Code §17200, *et seq.*); Colorado (Colo.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**new Shield devices with the GameStream feature and who continued to own them on March 29, 2023.**

32.     Plaintiff Ho also seeks certification, to the extent necessary or appropriate, of a California Subclass defined as:

**All persons who purchased, in the State of California, new Shield devices with the GameStream feature and who continued to own them on March 29, 2023.**

33.     The class period starts from the earliest date allowed by the applicable statute of limitations and continues to the date of judgment.

34.     Excluded from the classes are Defendant and its subsidiaries and affiliates, as well as Defendant's executives, board members, legal counsel, and their immediate families. Also excluded are all governmental entities and any judicial officers assigned to hear any aspect of this case.

35.     Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues.

36.     <u>Numerosity</u>. The proposed Classes are sufficiently numerous such that joinder of all members is impracticable. Defendant has sold millions of Shield devices to consumers nationwide throughout the class period. The Class members can be identified through Defendant's and/or Class members' records.

---

Rev. Stat. §§ 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. §§ 42-110, et seq.); Delaware (Del. Code tit. 6, §§ 2511, et seq.); District of Columbia (D.C. Code §§ 28-3901, et seq.); Florida (Fla. Stat. §§ 501.201, et seq.); Hawaii (Haw. Rev. Stat. §§ 480-1, et seq.); Idaho (Idaho Code §§ 48-601, et seq.); Illinois (815 ICLS §§ 505/1, et seq.); Maine (Me. Rev. Stat. tit. 5 §§ 205-A, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §§ 445.901, et seq.); Minnesota (Minn. Stat. §§ 325F.67, et seq.); Missouri (Mo. Rev. Stat. §§ 407.010, et seq.); Montana (Mo. Code. §§ 30-14-101, et seq.); Nebraska (Neb. Rev. Stat. §§ 59 1601, et seq.); Nevada (Nev. Rev. Stat. §§ 598.0915, et seq,); New Hampshire (N.H. Rev. Stat. §§ 358-A:1, et seq.); New Jersey (N.J. Stat. §§ 56:8-1, et seq.); New Mexico (N.M. Stat. §§ 57-12- 1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349, et seq.); North Dakota (N.D. Cent. Code §§ 51-15-01, et seq.); Oklahoma (Okla. Stat. tit. 15, §§ 751, et seq.); Oregon (Or. Rev. Stat. §§ 646.605, et seq.); Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, et seq.); South Dakota (S.D. Code Laws §§ 37-24-1, et seq.); Texas (Tex. Bus. & Com. Code §§ 17.41, et seq.); Virginia (VA Code §§ 59.1-196, et seq.); Vermont (Vt. Stat. tit. 9, §§ 2451, et seq.); Washington (Wash. Rev. Code §§ 19.86.010, et seq.); West Virginia (W. Va. Code §§ 46A-6- 101, et seq.); and Wisconsin (Wis. Stat. §§ 100.18, et seq.).

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

37.     <u>Common Questions of Fact and Law</u>. Common questions of fact and law exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Class, pursuant to Federal Rule of Civil Procedure 23(b)(3). Questions of fact and law that predominate over any individual issues include, but are not limited to, the following:

(a)     Whether Defendant caused the GameStream feature to stop working on Shield devices;

(b)     Whether Defendant's misconduct described herein constitutes unfair or unlawful business practices pursuant to state consumer protection statutes;

(c)     Whether Defendant's misconduct described herein constitutes trespass to chattels;

(d)     Whether Plaintiffs and members of the Classes have sustained financial loss, and the proper measure of any such financial loss;

(e)     Whether Plaintiffs and members of the Classes are entitled to equitable relief, including restitution and/or injunctive relief; and

(f)     Whether Plaintiffs and the members of the Classes are entitled to damages, and the proper measure of any such damages.

38.     <u>Typicality</u>. Plaintiffs' claims are typical of the claims of Class members because Plaintiffs and Class members bought Shield devices and sustained damages arising out of Defendant's wrongful conduct as detailed herein. Specifically, Plaintiffs and Class members' claims arise from Defendant intentionally removing access to the GameStream feature.

39.     <u>Adequacy</u>. Plaintiffs will fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class action lawsuits. Plaintiffs have no interests antagonistic to or in conflict with those of Class members and therefore will be adequate as representatives for the Classes.

40.     <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**FIRST CAUSE OF ACTION**
**TRESPASS TO CHATTELS**
**(On Behalf of the Nationwide Class)**

41. Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

42. Plaintiffs and the Class Members maintained actual or constructive possession of their Shield devices.

43. Defendant intentionally interfered with Plaintiffs and the Class Members' use of their Shield devices by intentionally causing the GameStream feature to stop functioning on Shield devices.

44. Plaintiffs and the Class Members did not consent to Defendant's interference with their Shield devices.

45. Defendant's interference was the actual and proximate cause of injury to Plaintiffs and the Class Members because it actually and substantially harmed the functionality of Shield devices by disabling a key feature of the device. Defendant's conduct significantly impaired the devices' functionality, quality, and value, and Plaintiffs and Class Members' use and enjoyment of the devices.

46. Defendant's interference was malicious and oppressive. Defendant knew and intended that its conduct would cause injury to Plaintiffs and Class Members, and it acted with conscious disregard of their rights.

47. As a result of Defendant's interference with their Shield devices, Plaintiffs and Class Members are entitled to recover the actual damages they suffered in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(On Behalf of the Nationwide Class)**

48. Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

49. Defendant is a merchant as defined by applicable Uniform Commercial Code

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   provisions and sold Shield devices to Plaintiffs and Class Members.

2       50.     Defendant impliedly warranted to Plaintiffs and members of the Class that NVIDIA

3   GameStream is a feature and service that, alongside with the appropriate hardware, would allow

4   Plaintiffs to stream games in 4K from a PC to their TV.

5       51.     Plaintiffs and the Class Members were in privity with Defendant as a result of

6   Defendant's express written warranties, or by Defendant acting in concert with other agents,

7   servants, partners, aiders and abettors, co-conspirators and/or joint venturers that were direct sellers

8   and Defendant's authorized retail stores.

9       52.     As alleged herein, Defendant's conduct described herein breached the implied

10  warranty of fitness for particular purpose because it eliminated access to the GameStream feature.

11  Defendant's actions have rendered the Shield devices unmerchantable and unfit for their intended

12  purpose.

13      53.     Defendant's conduct in eliminating access to the GameStream feature is a breach of

14  Defendant's obligation of good faith and fair dealing.

15      54.     Defendant knew or should have known that the update had aforesaid properties and

16  would render Shield devices unmerchantable and unfit for its intended use or purpose.

17      55.     Defendant had reasonable and adequate notice of Plaintiffs and the Class Members'

18  claims for breach of implied warranty of merchantability via the publicly available consumer

19  complaints predating the filing of this complaint and failed to cure.

20      56.     As a result of Defendant's breaches of implied warranty, Plaintiffs and Class

21  Members have been injured and are entitled to equitable/injunctive relief and/or damages in a

22  measure and amount which are to be determined at trial.

23                          **THIRD CAUSE OF ACTION**
    **VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES**
24                      **(On Behalf of the Multistate Class)**

25      57.     Plaintiffs repeat and reallege each and every allegation above as if set forth in full

26  herein.

27      58.     Each Plaintiff and member of the Multi-State Class is a consumer, purchaser or other

28  person entitled to the protection of the consumer protection laws of the state in which he or she

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  purchased a new Shield device with the GameStream feature.

2       59.     Shield devices with the GameStream feature were advertised, marketed and sold by

3  Defendant and constitute products to which these consumer protection laws apply.

4       60.     Plaintiffs and the Multi-State Class Members have been injured as a result of

5  Defendant's violations of the state consumer protection statutes listed above in paragraph 31 and

6  footnote 28, which also provide a basis for redress to Plaintiffs and Multi-State Consumer Class

7  Members based on Defendant's deceptive, unfair and unlawful acts, practices and conduct.

8       61.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade

9  practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State

10  Consumer Class.

11       62.     Defendant violated the Multi-State Class states' unfair and deceptive acts and

12  practices laws by intentionally causing the GameStream feature of Shield devices to stop working,

13  thus substantially affecting Class Members' use and enjoyment of the devices and denying them

14  access to a feature they purchased.

15       63.     As a result of Defendant's violations of the aforementioned states' unfair and

16  deceptive practices laws, Plaintiffs and members of the Multi-State Consumer Class paid a

17  premium for Shield devices.

18       64.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs

19  and members of the Multi-State Class are entitled to recover compensatory damages, restitution,

20  punitive damages and special damages, including but not limited to treble damages, reasonable

21  attorney's fees and costs and other injunctive or declaratory relief as deemed appropriate or

22  permitted pursuant to the aforementioned state statutes.

23  **FOURTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

24  **Cal. Bus. & Prof Code § 17200, *et seq.***

**(On Behalf of the California Subclass)**

25

26       65.     Plaintiff Ho repeats and realleges each and every allegation above as if set forth in

full herein.

27

28       66.     Defendant is a "person" as denied by Cal. Bus. & Prof. Code § 17201.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

67. The UCL prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) any "unlawful" business act or practice;" (b) any "unfair" business act or practice; and (c) "any . . . unfair, deceptive, untrue or misleading advertising."

68. The first type of violation of the UCL is an "unlawful" business act or practice. In committing the acts alleged above, Defendant violated the unlawful prong. An unlawful business act is any act that is prohibited by law. Defendant's violation of the Consumers Legal Remedies Act, as alleged herein, constitutes an act prohibited by law.

69. The second type of violation of Section 17200 is an "unfair" business act or practice. A practice may be "unfair" within the meaning of the UCL even if it does not violate particular provisions of law, and even if the precise nature of the challenged conduct has yet to be addressed in statutes or case law. Rather, in cases involving consumer goods, the "unfair" prong of the UCL is designed to have the flexibility to deal with new situations and new abuses.

70. Defendant's conduct described herein is unfair in that Defendant intentionally interfered with Plaintiff's and Class Members' use and enjoyment of their Shield devices and, in doing so, caused them to lose money or property. This conduct by Defendant was substantially injurious to consumers, offended public policy, and was immoral, unethical, oppressive, and unscrupulous, and the gravity of the conduct substantially outweighed any alleged benefits attributable to such conduct.

71. Any purported "justification" for Defendant's conduct is outweighed by the gravity of the consequences to Plaintiffs and Class members and Defendant's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

72. These above-described unlawful and unfair business practices by Defendant present an ongoing threat to Plaintiffs and the Class Members. Plaintiffs are informed and believe and thereon allege that Defendant has systematically perpetrated deceptive and unfair practices upon members of the public and has intentionally deceived Plaintiffs and the Class Members through the conduct in causing the GameStream feature to stop working on Shield devices.

73. As a direct and proximate result of Defendant's violation of the Unfair Competition

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  Law, Plaintiff Ho and the California Subclass Members have suffered injury in fact and lost money

2  and property.

3       74.     As a direct and proximate result of Defendant's unlawful and unfair acts and

4  practices, Plaintiff Ho, on behalf of himself and all others similarly situated and, as appropriate, on

5  behalf of the general public, see equitable relief, including full restitution of all improper revenues

6  and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by

7  law.

8       75.     The refusal to reinstate access to GameStream on Shield devices constitutes ongoing

9  violations of the UCL and justifies the issuance of an injunction requiring Defendant to act in

10  accordance with the law. There is no other adequate remedy at law and if an injunction is not

11  ordered, Plaintiff Ho and the California Subclass Members will continue to suffer irreparable harm

12  and/or injury in that they will not receive access to a feature that they paid for. All remedies are

13  cumulative pursuant to Cal. Bus. & Prof. Code § 17205.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**(On Behalf of the California Subclass)**

16       76.     Plaintiff Ho repeats and realleges each and every allegation above as if set forth in

17  full herein.

18       77.     Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

19       78.     Plaintiff and the California Subclass Members are "consumers," within the meaning

20  of Cal. Civ. Code § 1761(d).

21       79.     Shield devices are "goods," within the meaning of Cal. Civ. Code § 1761(a).

22       80.     Plaintiff Ho and the California Subclass Members' purchases of Shield devices are

23  "transaction," as that term is defined by Cal. Civ. Code § 1761(e).

24       81.     As set forth below, the CLRA deems the following unfair methods of competition

25  and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result

26  or which does result in the sale or lease of goods or services to any consumer as unlawful:

27      •  "Representing that goods … have sponsorship, approval, characteristics, ingredients,

28        uses, benefits, or quantities that they do not have." Cal. Civ. Code § 1770(a)(5);

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

- "Advertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9); and

- "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code § 1770(a)(16).

82. Defendant engaged in unfair competition or unfair or deceptive acts in violation of Cal. Civ. Code § 1770 as set forth above when it advertised, marketed and sold Shield devices with access to GameStream and thereafter intentionally interfered with Plaintiff's and the California Subclass Members' use and enjoyment of their Shield devices and, in doing so, caused them to lose money or property.

83. Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in California and throughout the United States.

84. Defendant intended that Plaintiff Ho and California Subclass Members would rely on their unfair and deceptive acts when purchasing Shield devices.

85. Plaintiff Ho and California Subclass Members would not have purchased, or would have paid less for, Shield devices had they known that they would lose access to GameStream feature.

86. As a direct and proximate result of Defendant's violation of Cal. Civ. Code § 1770, Plaintiffs and the Class members have suffered injury in fact and lost money and property.

87. As a direct and proximate result of Defendant's unlawful and unfair acts and practices, Plaintiffs, on behalf of themselves and all others similarly situated and, as appropriate, on behalf of the general public, seek equitable relief, including an injunction and full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

88. On April 12, 2023, pursuant to Cal. Civ. Code § 1782, Plaintiffs notified Defendant in writing via certified mail, return receipt requested, of its violations of Cal. Civ. Code § 1770 described herein and demanded that it correct the problems associated with the actions detailed herein and give notice to all affected consumers of its intent to do so.

89. A declaration establishing that venue in this District is proper pursuant to Civil Code

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

§1780(d) is attached hereto as Exhibit A.

90.     This cause of action does not, at this point, seek damages, but is confined solely to equitable relief.  If Defendant does not remedy the conduct alleged herein within thirty days of April 12, 2023, Plaintiffs will amend their Complaint to seek damages under the Consumer Legal Remedies Act. *See* Cal. Civ. Code § 1782(d).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs and the Class Members pray for relief and judgment against Defendant, as follows:

(g)     An order certifying the classes and appointing Plaintiffs as Class Representatives and their counsel as Class Counsel;

(h)     Judgment finding Defendant liable for trespass to chattels;

(i)     Judgment finding that Defendant violated the UCL by engaging in unlawful and/or unfair business acts and practices;

(j)     Judgment finding that Defendant violated the CLRA by engaging in unfair competition or unfair or deceptive acts;

(k)     Judgment finding that Defendant violated state consumer protection statutes by engaging in unlawful and/or unfair business acts and practices;

(l)     Damages suffered by Plaintiffs and the Class;

(m)     Restitution and/or restitutionary disgorgement to Plaintiffs and the Class Members of all monies wrongfully obtained by Defendant;

(n)     Appropriate injunctive relief;

(o)     Punitive damages for its intentional conduct as set forth herein;

(p)     An award of attorneys' fees and costs, as allowed by law;

(q)     An award of pre-judgment and post-judgment interest, as provided by law; and

(r)     Such other or further relief as may be appropriate under the circumstances.

/ / /

/ / /

/ / /

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1

## <u>JURY DEMAND</u>

2

Plaintiffs demand a trial by jury on all claims so triable.

3

4    DATED:  April 18, 2023

**PEARSON WARSHAW, LLP**
DANIEL L. WARSHAW
JILL M. MANNING
NAVEED ABAIE

5

6

7    **GUBERNICK LAW, P.L.L.C.**
BENJAMIN GUBERNICK

8

9

10   By:  _____
                /s/ Daniel L. Warshaw
                    DANIEL L. WARSHAW

11

12   Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

# EXHIBIT A

1  DANIEL L. WARSHAW (Bar No. 185365)
   dwarshaw@pwfirm.com
2  NAVEED ABAIE (Bar No. 323338)
   nabaie@pwfirm.com
3  **PEARSON WARSHAW, LLP**
4  15165 Ventura Boulevard, Suite 400
   Sherman Oaks, California 91403
5  Telephone: (818) 788-8300
   Facsimile:  (818) 788-8104
6

7  JILL M. MANNING (Bar No. 178849)
   jmanning@pwfirm.com
8  **PEARSON WARSHAW, LLP**
   555 Montgomery St., Suite 1205
9  San Francisco, California 94111
   Telephone:  (415) 433-9000
10

11 BENJAMIN GUBERNICK (Bar No. 321883)
   ben@gubernicklaw.com
12 **GUBERNICK LAW P.L.L.C.**
   10720 W. Indian School Rd., Suite 19, PMB 12
13 Phoenix, Arizona 85037
   Telephone:  (623) 252-6961
14

15 Attorneys for Plaintiffs

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18                   **SAN JOSE DIVISION**

19

20 CARLTON DAVENPORT and QUANG HO,      CASE NO.
   Individually and on Behalf of All Others
21 Similarly Situated,                   **CLASS ACTION**

22                    Plaintiffs,        **DECLARATION OF QUANG HO
                                         PURSUANT TO CAL. CIV. CODE**
23              v.                       **SECTION 1780(d)**

24    NVIDIA Corporation,

25                    Defendant.

26

27

28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DocuSign Envelope ID: 7018CC750-A7AD-4BA3-991E-977208620103

I, QUANG HO, declare as follows:

1.  I am a citizen of the State of California, and a Plaintiff is this action. I have personal knowledge of the facts herein and, if called as a witness, I could and would testify completely thereto.

2.  I make this declaration pursuant to California Civil Code § 1780(d) ("CLRA").

3.  The CLRA provides that, "[a]n action under subdivision (a) or (b) may be commenced in the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred."

4.  Venue for this matter is appropriate in the San Jose Division of the Northern District of California because Defendant's principal place of business is located in Santa Clara County.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on _____4/13/2023_____ in San Bernardino County, California.

QUANG HO

DECLARATION OF QUANG HO PURSUANT TO CAL. CIV. CODE SECTION 1780(d)

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403