LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
NICHOLAS A. SANTOS (CSB No. 335767)
nsantos@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

DAVID W. FEDER (*pro hac vice* forthcoming)
dfeder@fenwick.com
FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, NY  10010
Telephone:     212.430.2600

Y. MONICA CHAN (*pro hac vice* forthcoming)
mchan@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:     206.913.4319

Attorneys for Defendant
NVIDIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARLTON DAVENPORT and QUANG HO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No.: 5:23-cv-01877-BLF<br><br>**DEFENDANT NVIDIA CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**<br><br>Date:      December 7, 2023<br>Time:     9:00 a.m.<br>Dept:     Courtroom 3, 5th floor<br>Judge:    Beth Labson Freeman<br><br>Trial Date:   None |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 7, 2023, at 9:00 a.m., or as soon as the matter may be heard, before the Honorable Beth Labson Freeman, Courtroom 3, 5th Floor, of the U.S. District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Defendant NVIDIA Corporation shall move and hereby moves the Court for an order compelling Plaintiffs Carlton Davenport and Quang Ho to arbitrate their claims on an individual basis and staying these proceedings pending arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 2 *et seq*. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and the Declaration of Brian Choi and attached exhibit, all pleadings and papers on file in this action, and such other written or oral argument as may be presented to the Court at the time of hearing or otherwise.

# STATEMENT OF RELIEF SOUGHT

NVIDIA respectfully requests that the Court enter an order compelling arbitration of Plaintiffs' claims and staying these proceedings pending arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 2 *et seq*.

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.  STATEMENT OF THE FACTS ......................................................................................... 1

    A.   The Parties, Devices, and the GameStream Service at Issue. ................................. 1

    B.   SHIELD Users Agree to Arbitration by Setting Up Their SHIELD Devices. ......... 2

    C.   By Using Their SHIELD Devices, Plaintiffs Agreed to Arbitration but Plaintiffs Ignored Their Agreement and Filed This Action. ................................... 3

III. ARGUMENT ....................................................................................................................... 4

    A.   Plaintiffs Agreed to and Must Arbitrate Their Claims on an Individual Basis. ......................................................................................................................... 4

        1.   The FAA Governs the Arbitration Agreement ............................................ 4

        2.   Delaware Law Applies Here to the Extent the FAA Is Silent ..................... 5

        3.   Plaintiffs Agreed to Arbitrate with NVIDIA. ............................................... 5

    B.   Threshold Questions of Arbitrability Are Delegated to the Arbitrator. ................... 7

    C.   Even If the Court Were to Decide Arbitrability, Plaintiffs' Claims Fall Within the Scope of the Arbitration Provision and the Agreements Are Enforceable. ................................................................................................................ 8

IV.  CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) .................................................................................................................. 4

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .................................................................................................................. 4

*Benson v. Casa de Capri Enters., LLC*,
    980 F.3d 1328 (9th Cir. 2020) ................................................................................................... 8

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ...................................................................................................... 6

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ............................................................................................... 4, 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ................................................................................................... 4

*Cooper v. Adobe Sys.*,
    No. 18-cv-06742, 2019 WL 5102609 (N.D. Cal. Oct. 11, 2019) (Freeman, J.) ....................... 7

*Evans v. PayPal, Inc.*,
    No. 22-cv-00248-BLF, 2022 WL 1813993 (N.D. Cal. June 2, 2022)
    (Freeman, J.) .......................................................................................................................... 5, 8

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) .................................................................................................................. 5

*Geraci v. Uber Techs., Inc.*,
    No. N21C-07-151 CLS, 2021 WL 5028368 (Del. Super. Ct. Oct. 29, 2021) .......................... 6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) .................................................................................................................... 8

*Gutierrez v. FriendFinder Networks, Inc.*,
    No. 18-cv-05918-BLF, 2019 WL 1974900 (N.D. Cal. May 3, 2019) ...................................... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ............................................................................................................ 4, 7

*Houtchens v. Google LLC*,
    No. 22-cv-02638-BLF, 2023 WL 122393 (Freeman, J.) .......................................................... 7

*IMEG Corp. v. Astourian*,
 No. 19-cv-02560-R-AFM, 2019 WL 6486041 (C.D. Cal. July 30, 2019) ............................... 6

*Jackson v. Amazon.com, Inc.*,
 559 F. Supp. 3d 1132 (S.D. Cal. 2021) ................................................................................... 6

*Ketler v. PFPA, LLC*,
 132 A.3d 746 (Del. 2016) ....................................................................................................... 8

*LeBoeuf v. NVIDIA Corp.*,
 No. 19-cv-02543-SVK, 2019 WL 13210428 (N.D. Cal. Nov. 18, 2019), *aff'd*,
 833 F. App'x 465 (9th Cir. 2021) ............................................................................... 1, 5, 6, 7

*Newell Rubbermaid Inc. v. Storm*,
 No. 9398-VCN, 2014 WL 1266827 (Del. Ch. Mar. 27, 2014) ................................................ 6

*Rent-A-Center, W., Inc. v. Jackson*,
 561 U.S. 63 (2010) .................................................................................................................. 8

*Ross v. Shutterfly Lifetouch, LLC*,
 No. 20-cv-06040-BLF, 2021 WL 4776666 (N.D. Cal. Oct. 13, 2021)
 (Freeman, J.) ....................................................................................................................... 4, 9

*Sovak v. Chugai Pharm. Co.*,
 280 F.3d 1266 (9th Cir. 2002) ................................................................................................. 5

*Tingyu Cheng v. PayPal, Inc.*,
 No. 21-cv-03608-BLF, 2022 WL 126305 (N.D. Cal. Jan. 13, 2022)
 (Freeman, J.) ........................................................................................................................ 5, 6

*United States v. Sutcliffe*,
 505 F.3d 944 (9th Cir. 2007) ................................................................................................... 5

**Statutes**

9 U.S.C.
 § 2 ............................................................................................................................................ 4
 § 3 ............................................................................................................................................ 9

**Other Authorities**

JAMS Streamlined Rule 8(b) ........................................................................................................ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This dispute belongs in arbitration.  To use the SHIELD devices at issue in this lawsuit, Plaintiffs Carlton Davenport and Quang Ho necessarily agreed to binding arbitration.  Plaintiffs agreed to the SHIELD Software License Agreement ("SHIELD Agreement"), including its arbitration provision, when they set up their SHIELD devices.  During this process, NVIDIA put Plaintiffs on notice of, and provided Plaintiffs an opportunity to review, the SHIELD Agreement, which broadly governs the "use of software, firmware, content, applications, documentation and any data that is delivered by NVIDIA . . . for use in a NVIDIA SHIELD device" and requires arbitration of the disputes Plaintiffs raise here.  Declaration of Brian Choi ("Choi Decl.") Ex. A at 1.  Only after Plaintiffs clicked "Agree and Continue" could they proceed to use their SHIELD devices to stream content, to launch or install any SHIELD-compatible apps or software services, including GameStream, or for any other standard purpose.

In *LeBoeuf v. NVIDIA Corp.*, this District, and the Ninth Circuit on appeal, examined NVIDIA's arbitration provision in a different agreement.  No. 19-cv-02543-SVK, 2019 WL 13210428 (N.D. Cal. Nov. 18, 2019), *aff'd*, 833 F. App'x 465 (9th Cir. 2021).  The *LeBoeuf* courts granted NVIDIA's motion to compel arbitration.  *Id.*  Both courts further found that the incorporation of the rules of the Judicial Mediation and Arbitration Services ("JAMS") into the binding arbitration provision clearly and unmistakably delegated any question of arbitrability—i.e., the validity and scope of the arbitration clause—to the arbitrator.  833 F. App'x at 466-67.  Like in *LeBoeuf*, the SHIELD Agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator by incorporating JAMS's rules.  Thus, the Court should grant NVIDIA's Motion and compel Plaintiffs to arbitrate their claims on an individual basis before JAMS.

### II.  STATEMENT OF THE FACTS

#### A.  The Parties, Devices, and the GameStream Service at Issue.

NVIDIA, a Delaware company with its principal place of business in California (Compl. ¶ 13), manufactures and sells the SHIELD line of streaming devices ("SHIELD devices").  Choi Decl. ¶ 2.  SHIELD devices offer media streaming functionality, allowing the user to stream video

1  games, as well as subscription video services like Netflix, Amazon Prime, YouTube, and Disney
2  Plus, and other digital content to a television or monitor.  *Id.*  SHIELD devices are compatible with
3  downloadable software services provided by NVIDIA and third parties.  *Id.*  From July 2013 until
4  this year, one of these services was "GameStream," a free software service provided by NVIDIA
5  that allowed SHIELD users to stream video games that resided on an NVIDIA-powered PC to a
6  television or monitor.  *Id.* ¶ 3.  On December 16, 2022, NVIDIA announced the end of service for
7  GameStream effective around mid-February 2023.  Compl. ¶ 4.

        **B.**     **SHIELD Users Agree to Arbitration by Setting Up Their SHIELD Devices.**

9  When first turning on a SHIELD device, the user automatically enters the mandatory, first-
10 time set-up flow (known as an out-of-the-box experience) and must complete several steps before
11 using the device.  Choi Decl. ¶ 5.  As shown in the image below, the user must proceed to a clean,
12 uncluttered screen identifying the "Terms of Use," which is shown in an enlarged font.  *Id.* ¶ 6.
13 Just below that title, the user is put on notice, in contrasting white font against black background,
14 that "[b]y continuing, you are agreeing to the NVIDIA Software Terms of Use."  *Id.*  Directly below
15 the "Agree and Continue" button, the user can click "View Terms of Use" to view a scrollable
16 SHIELD Agreement.  *Id.* ¶¶ 6, 8.



The SHIELD Agreement states that it governs the "use of software, firmware, content, applications, documentation and any data that is delivered by NVIDIA (collectively, 'SOFTWARE') for use in a NVIDIA SHIELD device." Choi Decl. Ex. A at 1. It provides: (1) a user must "give NVIDIA a chance to resolve" "any complaint about this license or the SOFTWARE," *id.* at 5; and (2) if the parties cannot resolve the dispute informally, a user agrees to resolve such dispute "according to the laws of the State of Delaware without regard to its conflict of laws rules or principles and submit the dispute to binding arbitration before an arbitrator from [JAMS] located in Santa Clara County, California under the Optional Expedited Arbitration Procedures then in effect for JAMS," *id*. Additionally, the user "agree[s] to bring any claims in [their] individual capacity" and "waive[s] the right to a trial by jury or to participate in a class action or other type of representative proceeding." *Id.*

After exiting the SHIELD Agreement, the user returns to the "Terms of Use" screen and cannot use the SHIELD device without selecting "Agree and Continue." Choi Decl. ¶ 7. Following set-up, a user can access and review the SHIELD Agreement through the "Settings" menu. *Id.* ¶ 9.

### C. By Using Their SHIELD Devices, Plaintiffs Agreed to Arbitration but Plaintiffs Ignored Their Agreement and Filed This Action.

Plaintiff Davenport allegedly bought a SHIELD device from a Best Buy location in New Mexico in 2022. Compl. ¶ 11. Plaintiff Ho allegedly bought two SHIELD devices from a Best Buy location in California in 2020. *Id.* ¶ 12. Both claim they purchased SHIELD devices for their "personal use so [they] could stream games from [their] desktop computer to [their] television" using GameStream. *Id.* ¶¶ 11-12. Before they could use GameStream, Plaintiffs had to set up their SHIELD devices, thereby assenting to the arbitration provision in the SHIELD Agreement. Choi Decl. ¶ 7.

Plaintiffs contend NVIDIA's decision to discontinue GameStream, its free SHIELD-compatible software service, "harmed the functionality of [their] Shield devices." Compl. ¶¶ 11-12, 21, 29, 45. The gravamen of Plaintiffs' Complaint relates to GameStream (a software service) and the "functionality" of Plaintiffs' SHIELD devices and is therefore covered by the subject of the SHIELD Agreement, as it falls within the definition of "SOFTWARE" in the SHIELD Agreement

(i.e., "software, firmware, content, applications, documentation and any data that is delivered by NVIDIA"), including its binding arbitration provision. Choi Decl. Ex. A at 1.  Plaintiffs filed this suit in contravention of the SHIELD Agreement, seeking to represent a nationwide class and a California subclass of SHIELD device purchasers. Compl. ¶¶ 30-32.  Plaintiffs assert five claims, all based on the removal of the GameStream service: (1) trespass to chattels; (2) breach of implied warranty of fitness for a particular purpose; (3) violations of state consumer protection statutes; (4) violation of California's Unfair Competition law; and (5) violation of California's Consumer Legal Remedies Act. *Id.* ¶¶ 41-90.  These claims belong in arbitration.

### III.   ARGUMENT

The parties' agreements are governed by the Federal Arbitration Act ("FAA"), which "reflect[s] [] a 'liberal [] policy favoring arbitration.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).  Under the FAA, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  These "gateway" arbitrability issues "can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide'" such delegation. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted).  Where, as here, "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*; *Ross v. Shutterfly Lifetouch, LLC*, No. 20-cv-06040-BLF, 2021 WL 4776666, at *2 (N.D. Cal. Oct. 13, 2021) (Freeman, J.).  Because the parties entered into an arbitration agreement and clearly and unmistakably delegated gateway questions to the arbitrator, the Court should grant this Motion.

  **A.**  **Plaintiffs Agreed to and Must Arbitrate Their Claims on an Individual Basis.**

    **1.**  **The FAA Governs the Arbitration Agreement.**

The FAA governs when the "contract evidenc[es] a transaction involving commerce." 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995).  This transaction

involves interstate commerce because NVIDIA is a Delaware company headquartered in California, and Plaintiffs are New Mexico and California residents. Compl. ¶¶ 11-12. Additionally, "the Internet is an instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (citation omitted). The SHIELD Agreement governs the use of software made available by NVIDIA, which is accessible to users nationwide and through the Internet.

### 2. Delaware Law Applies Here to the Extent the FAA Is Silent.

Applying the choice-of-law rules of California, the forum state, the parties' choice of Delaware law should be enforced. Choi Decl. Ex. A at 5 (Plaintiffs agreeing to "the laws of the State of Delaware without regard to its conflict of laws rules or principles"); *cf. Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (holding that general "choice-of-law clause . . . suppl[ies] state substantive, decisional law, and not state law rules for arbitration," such that the FAA presumptively applies "but [the contractually chosen] substantive law applies in all other respects"). When evaluating a choice-of-law clause, California courts consider "either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Leboeuf*, 2019 WL 13210428, at *6 (citation omitted). "California courts have regularly determined that incorporation in a particular state is enough to constitute a 'substantial relationship.'" *Id.* at *7. NVIDIA is incorporated in Delaware (Compl. ¶ 13); the Court should thus apply Delaware contract law to the SHIELD Agreement. *Evans v. PayPal, Inc.*, No. 22-cv-00248-BLF, 2022 WL 1813993, at *3 (N.D. Cal. June 2, 2022) (Freeman, J.) ("[N]otwithstanding the choice-of-law provision, that PayPal is incorporated in Delaware creates a substantial relationship between this dispute and the parties and transactions at issue that would lead to applying Delaware substantive law.").

### 3. Plaintiffs Agreed to Arbitrate with NVIDIA.

Courts "apply ordinary state-law principles that govern the formation of contracts," here Delaware law, to determine whether parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Clickwrap agreements are routinely recognized by courts and are enforceable under Delaware law." *Tingyu Cheng v. PayPal, Inc.*, No. 21-cv-03608-BLF, 2022

WL 126305, at *3 (N.D. Cal. Jan. 13, 2022) (Freeman, J.) (citation omitted); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("[C]ourts have routinely found clickwrap agreements enforceable.") (applying the laws of California and New York).  A party assents to an agreement when he is put "on notice that he [is] modifying his legal rights" and takes affirmative action to manifest acceptance.  *Tingyu Cheng*, 2022 WL 126305, at *4.  In *Newell Rubbermaid Inc. v. Storm*, a Delaware court found that plaintiff agreed to the clickwrap agreement where the webpage linked to the agreement and plaintiff clicked "Accept" after being put on notice that doing so manifested her assent.  No. 9398-VCN, 2014 WL 1266827, at *7 (Del. Ch. Mar. 27, 2014); *Geraci v. Uber Techs., Inc.*, No. N21C-07-151 CLS, 2021 WL 5028368, at *2 (Del. Super. Ct. Oct. 29, 2021) (finding plaintiff "entered into a valid and enforceable arbitration agreement" by clicking "YES, I AGREE" to the terms of the agreement).  Even if the Court were to apply California law on contract formation, it would reach the same conclusion.  *Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1138 (S.D. Cal. 2021) ("The laws of contract formation of . . . Delaware, and California law are materially the same."); *IMEG Corp. v. Astourian*, No. 19-cv-02560-R-AFM, 2019 WL 6486041, at *3 (C.D. Cal. July 30, 2019) ("both California and Delaware law regarding contract formation are in sync").

  Here, Plaintiffs had notice of and agreed to arbitrate with NVIDIA in their "individual capacity" by assenting to the SHIELD Agreement.  Choi Decl. Ex. A at 5.  As described above, Plaintiffs had to set up their SHIELD devices before they could use them and before they could enable the GameStream service.  Choi Decl. ¶¶ 5-8.  During this process, Plaintiffs were put on notice through the prominent "Terms of Use" screen that, "[b]y continuing, [they] are agreeing" to the SHIELD Agreement.  *Id.* ¶ 6.  The SHIELD Agreement is viewable by pressing the "View Terms of Use" button, shown in contrasting white font against a black background, directly below the call-to-action "Agree and Continue" button.  *Id.* ¶¶ 6, 8.  Plaintiffs could have reviewed the SHIELD Agreement and chosen to abandon the set-up process; instead, like in *Newell* and *Geraci*, they chose to "Agree and Continue."  *Id.* ¶ 6.  By doing so, Plaintiffs assented to the terms of the SHIELD Agreement.  *LeBoeuf*, 2019 WL 13210428, at *5 (finding plaintiffs assented to arbitration, in part, because they "had to click 'AGREE AND CONTINUE' to install" operating software).

**B.      Threshold Questions of Arbitrability Are Delegated to the Arbitrator.**

Because the parties entered into agreements to arbitrate that "clearly and unmistakably" delegate threshold arbitrability questions to the arbitrator, *Brennan*, 796 F.3d at 1130, the Court should grant NVIDIA's Motion, without the necessity of determining issues of arbitrability. *Henry Schein*, 139 S. Ct. at 527, 530 ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). This Court has held that "[i]ncorporation of arbitration rules, such as the JAMS rules, constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Cooper v. Adobe Sys.*, No. 18-cv-06742, 2019 WL 5102609, at *4 (N.D. Cal. Oct. 11, 2019) (Freeman, J.) (citing *Brennan*, 796 F.3d at 1130); *LeBoeuf*, 833 F. App'x at 467.

As in *Cooper* and *LeBoeuf*, the SHIELD Agreement provides for "binding arbitration before an arbitrator from [JAMS]" and invokes JAMS's rules, which authorize the arbitrator to determine jurisdiction and arbitrability. Choi Decl. Ex. A at 5; JAMS Streamlined Rule 8(b) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."). Thus, an arbitrator, not this Court, must decide threshold questions of arbitrability, such as enforceability and "scope," i.e., "whether [Plaintiffs'] claims fall outside" it. *Leboeuf*, 833 F. App'x at 466-67 (holding that NVIDIA's incorporation of JAMS's rules in the arbitration provision "clearly and unmistakably evidences the parties' intention to delegate issues of arbitrability to the arbitrator"); *Houtchens v. Google LLC*, No. 22-cv-02638-BLF, 2023 WL 122393, at *5, 7 (Freeman, J.) (declining to decide scope and enforceability issues that "have been delegated to the arbitrator through [the agreement's] incorporation of the AAA rules").

FENWICK & WEST LLP
ATTORNEYS AT LAW

### C. Even If the Court Were to Decide Arbitrability, Plaintiffs' Claims Fall Within the Scope of the Arbitration Provision and the Agreements Are Enforceable.

The Court need not decide arbitrability and enforceability questions because the parties clearly and unmistakably delegated these questions to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (holding that given the clear and unmistakable delegation clause, enforceability of the arbitration agreement is a question for the arbitrator, not the court). In all events, Plaintiffs could not carry their heavy "burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). This is especially true where "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330-31 (9th Cir. 2020) (citation omitted).

First, Plaintiffs' claims are clearly covered by the SHIELD Agreement. Except for a limited exclusion for injunctive relief inapplicable here, the SHIELD Agreement covers "*any* complaint about . . . the SOFTWARE," broadly defined as "software, firmware, content, applications, documentation and any data that is delivered by NVIDIA . . . for use in a NVIDIA SHIELD device." Choi Decl. Ex. A at 1, 5 (emphasis added). Plaintiffs necessarily relied on that SOFTWARE to operate their SHIELD devices and now contend their SHIELD devices' functionality, which is dependent on that SOFTWARE, was harmed by GameStream's discontinuation.

Second, Plaintiffs cannot meet their heavy burden to prove unconscionability. *Evans*, 2022 WL 1813993, at *4. A contract provision is unconscionable under Delaware law only if a court finds "procedural unconscionability—the lack of a meaningful choice—and substantive unconscionability—unreasonably favorable arbitration terms to one party." *Id.*; *Gutierrez v. FriendFinder Networks, Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *10 (N.D. Cal. May 3, 2019) (under California law, "[a] contract must be both substantively and procedurally unconscionable for a court to find the contract unconscionable"). But "[t]here is no deprivation of meaningful choice if a party can walk away from the contract," *Ketler v. PFPA, LLC*, 132 A.3d 746, 748 (Del. 2016) (gym membership release is not unconscionable because plaintiff was free to

accept or reject), and here, Plaintiffs were free to "walk away" from the agreement. Instead, they chose to "Agree and Continue" to use their SHIELD devices. *See* Choi Decl. ¶¶ 6-7.

## IV. CONCLUSION

All of Plaintiffs' claims are arbitrable under the SHIELD Agreement. Accordingly, NVIDIA respectfully requests that the Court compel Plaintiffs to arbitrate their claims and stay all proceedings pending the completion of arbitration. 9 U.S.C. § 3; *Ross*, 2021 WL 4776666, at *7.

Dated: June 26, 2023

FENWICK & WEST LLP

By: */s/ Laurence F. Pulgram*
    Laurence F. Pulgram
    Molly R. Melcher
    David W. Feder
    Y. Monica Chan
    Nicholas A. Santos

Attorneys for Defendant
NVIDIA CORPORATION