LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
NICHOLAS A. SANTOS (CSB No. 335767)
nsantos@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:      415.281.1350

DAVID W. FEDER (*pro hac vice* forthcoming)
dfeder@fenwick.com
FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, NY  10010
Telephone:     212.430.2600

Y. MONICA CHAN (*pro hac vice* forthcoming)
mchan@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:     206.913.4319

Attorneys for Defendant
NVIDIA CORPORATION

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARLTON DAVENPORT and QUANG HO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No.: 5:23-cv-01877-BLF<br><br>**DEFENDANT NVIDIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:       December 7, 2023<br>Time:       9:00 a.m.<br>Dept:       Courtroom 3, 5th floor<br>Judge:      Beth Labson Freeman<br><br>Trial Date:  None |

### NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 7, 2023, at 9:00 a.m., or as soon as the matter may be heard, before the Honorable Beth Labson Freeman, Courtroom 3, 5th Floor, of the U.S. District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Defendant NVIDIA Corporation ("NVIDIA") shall move and hereby moves the Court for an order dismissing Plaintiffs Carlton Davenport and Quang Ho's Complaint in its entirety, under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs' Complaint fails to state facts demonstrating any claims for relief that are plausible on their face, for the reasons explained in the accompanying Memorandum of Points and Authorities in Support of NVIDIA's Motion to Dismiss.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice and the Declaration of Molly Melcher and the attached exhibits; all pleadings and papers on file in this action; and other written or oral argument presented to the Court at the time of hearing or otherwise.

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................................... 2

       A.     NVIDIA SHIELD Devices ............................................................................ 2

       B.     The GameStream Service .............................................................................. 2

       C.     Plaintiffs' Allegations .................................................................................. 3

III.   LEGAL STANDARD ............................................................................................... 4

IV.    ARGUMENT ............................................................................................................ 4

       A.     The Common-Law Claims (First and Second Causes of Action) Fail
              Because the Complaint Does Not Specify the State Law on Which They
              Are Based. .................................................................................................... 4

       B.     Plaintiffs Fail to State a Claim for Trespass to Chattels (First Cause of
              Action). ......................................................................................................... 5

              1.     Plaintiffs Plead No Exclusive Property Interest in GameStream. .............. 5

              2.     Plaintiffs Fail to Allege Injury. .............................................................. 7

       C.     Plaintiffs Fail to State a Claim for Breach of the Implied Warranty of
              Fitness for a Particular Purpose (Second Cause of Action). ...................... 8

              1.     The Implied Warranty Claim Fails for Lack of Privity of Contract. ......... 8

              2.     Plaintiffs Fail to Identify Any "Particular Purpose." ................................ 9

       D.     Plaintiffs Cannot Assert Multiple State Consumer Protection Claims on
              Behalf of the Multi-State Class (Third Cause of Action). ...................... 11

       E.     Plaintiff Ho Cannot State a CLRA Claim (Fifth Cause of Action). .................... 12

       F.     Plaintiff Ho Pleads No Unfair or Unlawful Conduct under the UCL (Fourth
              Cause of Action). ...................................................................................... 14

              1.     Because the CLRA Claim Fails, the Complaint Pleads No
                     "Unlawfulness." ................................................................................... 14

              2.     The Complaint Fails to Allege "Unfairness." .......................................... 15

       G.     Plaintiffs Lack Standing to Seek Injunctive Relief. ............................................ 15

V.     CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrieta v. Cnty. of Kern*,
No. 1:14-cv-00400-LJO-JLT, 2014 WL 2801048 (E.D. Cal. June 19, 2014) .......................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................... 4

*Broge v. ALN Int'l, Inc.*,
Case No. 17-cv-07131-BLF, 2018 WL 2197524 (N.D. Cal. May 14, 2018) .......................... 8

*Browning v. Am. Honda Motor Co.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021) (Freeman, J.) ....................................................... 10, 11

*Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...................................................................................................... 14

*Cimoli v. Alacer Corp.*,
587 F. Supp. 3d 978 (N.D. Cal. 2022) (Freeman, J.) ....................................................... 11, 12

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ............................................................................................ 8

*Corzine v. Whirlpool Corp.*,
No. 15-cv-05764-BLF, 2016 WL 6476172 (N.D. Cal. Nov. 2, 2016)
(Freeman, J.) ..................................................................................................................... 9

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018).............................................................................................. 12

*Eidmann v. Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) ................................................................................ 15

*Ferrari v. Mercedes Benz USA, LLC*,
No. 17-cv-00018-YGR, 2017 WL 3115198 (N.D. Cal. July 21, 2017).................................. 5

*Fields v. Wise Media, LLC*,
No. C 12-05160 WHA, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013)................................. 7

*Forrett v. Gourmet Nut, Inc.*,
No. 22-cv-02045-BLF, 2022 WL 6768217 (N.D. Cal. Oct. 11, 2022)
(Freeman, J.) ..................................................................................................................... 16

FENWICK & WEST LLP
ATTORNEYS AT LAW

*G&H Diversified Mfg. LP v. Regreen Techs., Inc.*,
   No. SACV 21-00062-CJC(JDEx), 2021 WL 6618662 (C.D. Cal. Sep. 20,
   2021) ............................................................................................................................ 9

*G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.*,
   958 F.2d 896 (9th Cir. 1992)...................................................................................... 5

*Garcia v. Doe White Trucking Co.*,
   Case No. 20- cv-00134-SI, 2020 WL 3061784 (N.D. Cal. Jun. 9, 2020) ................... 8

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)...................................................................................... 4

*In re Google Assistant Priv. Litig.*,
   546 F. Supp. 3d 945 (N.D. Cal. 2021) (Freeman, J.) ............................................... 14

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................... 14

*Hauck v. Advanced Micro Devices, Inc.*,
   No. 18-CV-00447-LHK, 2019 WL 1493356 ............................................................ 10

*Intel Corp. v. Hamidi*,
   30 Cal. 4th 1342 (2003) .............................................................................................. 7

*Julian v. TTE Tech., Inc.*,
   No. 20-cv-02857-EMC, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) .................. 11

*K3b, Inc. v. Collectors Universe*,
   No. 30-2016-00856615, 2016 Cal. Super. LEXIS 22556
   (Cal. Super. Ct. Nov. 17, 2016) .................................................................................. 6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).................................................................................. 12

*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) .................................................................... 13

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017)...................................................................................... 4

*Marcus v. Apple Inc.*,
   No. C 14–03824 WHA, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ........................ 9

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................................................... 12

*Mary's Kitchen v. City of Orange*,
   No. 8:21-cv-01483-DOC-JDE, 2021 WL 6103368 (C.D. Cal. Nov. 2, 2021) ........ 6

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Mocek v. Alfa Leisure, Inc.*,
 114 Cal. App. 4th 402 (2003) ............................................................. 10

*In re Nexus 6P Prods. Liability Litig.*,
 293 F. Supp. 3d 888 (N.D. Cal. 2018) (Freeman, J.) ........................... 5, 8

*Perez v. Bath & Body Works, LLC*,
 No. 21-cv-05606-BLF, 2022 WL 2756670 (N.D. Cal. July 14, 2022) ............. 16

*Protégé Rest. Partners LLC v. Sentinel Ins. Co.*,
 517 F. Supp. 3d 981 (N.D. Cal. 2021) (Freeman, J.) ........................... 4, 10

*Punian v. Gillette Co.*,
 No. 14-CV-05028-LHK, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) ............. 11

*Romero v. Flowers Bakeries, LLC*,
 No. 14-cv-05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015)
 (Freeman, J.) ................................................................ 13, 14

*Romero v. Flowers Bakeries, LLC*,
 No. 14-cv-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016)
 (Freeman, J.) ...................................................................... 4

*Sapan v. Auth. Tax Servs., Ltd. Liab. Co.*,
 No. 13cv2782 JAH (JLB), 2014 WL 12493282 (S.D. Cal. July 15, 2014) ........... 7

*Sateriale v. R.J. Reynolds Tobacco Co.*,
 697 F.3d 777 (9th Cir. 2012)..................................................... 13

*Shaouli v. Saks Fifth Ave.*,
 No. CV 14-09590-AB, 2015 WL 13917124 (C.D. Cal. Apr. 2, 2015) ............... 14

*Sidhu v. Bayer Healthcare Pharm. Inc.*,
 No. 22-cv-01603-BLF, 2022 WL 17170159 (N.D. Cal. Nov. 22, 2022)
 (Freeman, J.) ................................................................ 14, 15

*Smith v. LG Elecs. U.S.A., Inc.*,
 No. C 14–03824 WHA, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014).................. 9

*So v. HP, Inc.*,
 No. 22-cv-02327-BLF, 2022 WL 16925965 (N.D. Cal. Nov. 14, 2022)
 (Freeman, J.) ..................................................................... 11

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
 580 F. Supp. 2d 896 (N.D. Cal. 2008) ......................................... 4, 5

*T&M Solar and Air Conditioning, Inc. v. Lennox Int'l Inc.*,
 83 F. Supp. 3d 855 (N.D. Cal. 2015) ......................................... 9, 10

*Taylor v. Google LLC*,
    No. 20-cv-07956-VKD, 2021 WL 4503459 (N.D. Cal. Oct. 1, 2021) ................................ 5, 6

*Thorpe Design, Inc. v. Viking Corp.*,
    Case No. 15-cv-03324-EDL, 2015 WL 5440792 (N.D. Cal. Sep. 15, 2015) .......................... 8

*Wade v. OnePlus USA Corp.*,
    No. 21-cv-05811-BLF, 2022 WL 3549590 (N.D. Cal. Aug. 17, 2022)
    (Freeman, J.) ..................................................................................................................... 7

*Wahl v. Yahoo! Inc.*,
    No. 17-cv-02745-BLF, 2017 WL 4098884 (N.D. Cal. Sep. 15, 2017)................................. 15

*Watkins v. MGA Ent., Inc.*,
    574 F. Supp. 3d 747 (N.D. Cal. Dec. 10, 2021)........................................................................ 8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................................... 14

Cal. Civ. Code § 1770(a)(5)....................................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................................... 4

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.   INTRODUCTION

3   NVIDIA's SHIELD line of devices allows users to "stream" TV shows, movies, games,

4   music, and other digital content to a television or monitor.  Beginning in 2013, NVIDIA included

5   a free service called "GameStream" in a bundle of SHIELD-compatible software.  GameStream

6   allowed users to stream video games from a PC to the SHIELD device for display on a television

7   or monitor.  In 2023, NVIDIA discontinued its support for the GameStream service, after giving its

8   users months of advance notice and offering guidance on how to use other video game streaming

9   services available for their SHIELD devices.  Plaintiffs Quang Ho and Carlton Davenport allegedly

10  purchased SHIELD devices.  Plaintiffs never allege that they actually used the GameStream service

11  and even acknowledge that SHIELD devices can still stream high-definition digital content,

12  including video games.  Nonetheless, they brought this class-action lawsuit against NVIDIA based

13  on NVIDIA's discontinuation of GameStream.

14  All of Plaintiffs' claims are subject to arbitration, as explained in NVIDIA's concurrently

15  filed Motion to Compel Arbitration.  Dkt. No. 21.  NVIDIA respectfully requests that the Court

16  decide that motion first and compel Plaintiffs to arbitration to permit the arbitrator to decide this

17  matter, including any issues around arbitrability.  But if the Court denies NVIDIA's Motion to

18  Compel Arbitration, then it should dismiss Plaintiffs' Complaint under Rule 12(b)(6) for its failure

19  to state any viable claims.

20  Both Plaintiffs assert a common-law claim for trespass to chattels (first cause of action) but

21  identify no property right to access the free GameStream software service in perpetuity.  Plaintiffs'

22  claim for breach of the implied warranty of fitness for a particular purpose (second cause of action)

23  fails because Plaintiffs were not in privity of contract with NVIDIA—as they allegedly bought their

24  SHIELD devices from a third-party retailer, not NVIDIA—and have not alleged any *particular*

25  *purpose* for their SHIELD devices distinguishable from their ordinary purpose.  Plaintiffs' claim

26  invoking multiple "state consumer protection statutes" (third cause of action) should be dismissed

27  because they lack standing to assert claims under the laws of any state other than those where they

28  reside or were allegedly injured (California or New Mexico) and have failed to plead any facts with

FENWICK & WEST LLP
ATTORNEYS AT LAW

respect to any state other than California.  Compl. ¶¶ 11-12.  Finally, Plaintiff Ho asserts a claim sounding in fraud under California's Consumer Legal Remedies Act ("CLRA") and a related claim under the Unfair Competition Law ("UCL") (fourth and fifth causes of action) but fails to allege any fraudulent misrepresentation by NVIDIA, any reliance, or any other actionable unfairness.

Accordingly, the Court should dismiss the Complaint in its entirety under Rule 12(b)(6).

## II.    STATEMENT OF FACTS

### A.    NVIDIA SHIELD Devices

NVIDIA manufactures and sells the SHIELD TV and the SHIELD TV Pro, and previously manufactured and sold tablets and gaming devices in the SHIELD family (collectively, with SHIELD TV and SHIELD TV Pro, "SHIELD devices").  Compl. ¶ 1; Declaration of Molly Melcher ("Melcher Decl.") Ex. 1.  SHIELD devices offer media streaming functionality, allowing users to stream video games and other digital content (e.g., Netflix, Disney Plus, or YouTube) to a television or monitor.  Compl. at 7, image.  SHIELD devices have many features that augment the streaming experience, including state-of-the-art image and sound quality and built-in voice-activated technology from Google Assistant.  Melcher Decl. Ex. 1.

### B.    The GameStream Service

GameStream was a "free" software service provided by NVIDIA that could be used to stream PC video game content to a television or monitor via the SHIELD device.  Compl. ¶¶ 18, 21.  It was "part of the [NVIDIA] Games Android TV application" ("NVIDIA Games"), a software application preinstalled in SHIELD devices that also featured other streaming services, such as NVIDIA's GeForce Now service.  *Id.* ¶¶ 1, 18.

On December 16, 2022, NVIDIA issued an "End of Service Notification" announcement: "[s]tarting in mid-February, a planned update to the NVIDIA Games app" will be released, causing GameStream to "no longer be available in app."  Compl. ¶ 4; Melcher Decl. Ex. 2.  NVIDIA explained that GameStream "will no longer be supported and eventually will stop working," but that "[a]ll other services supported by NVIDIA Games, including GeForce NOW," would "continue working" after "an app update."  Melcher Decl. Ex. 2.  SHIELD devices' intended functionality—the ability to stream high-definition content, including from a PC—remains intact,

FENWICK & WEST LLP
ATTORNEYS AT LAW

even after the discontinuation of the GameStream service.  As NVIDIA told GameStream users, existing software options would enable them to leverage SHIELD's streaming functionality.  It pointed to two alternatives to GameStream: (i) the free "Steam Link" service, a third-party application compatible with SHIELD's operating system; and (ii) "NVIDIA's GeForce NOW service." *Id.*  NVIDIA also explained how users could "configure Steam Link" to achieve the same streaming experience they found with GameStream, including streaming "in 4K or with low latency."[1]  *Id.*; *see also* Melcher Decl. Ex. 3 (explaining how users can optimize Steam Link, with graphic showing that "[o]nce optimized, Steam Link latency comes to within one frame of GameStream").

The Complaint alleges that, on March 29, 2023, a "forced" update to the NVIDIA Games application removed access to the GameStream service.  Compl. ¶ 5.

**C.     Plaintiffs' Allegations**

Plaintiffs filed the Complaint on April 18, 2023.  According to the Complaint, Plaintiff Davenport is a New Mexico resident who purchased an unspecified SHIELD device at a Best Buy store in New Mexico some time in 2022.  Compl. ¶ 11.  The Complaint alleges that Plaintiff Ho is a California resident who purchased two unspecified SHIELD devices from a Best Buy store in California some time in 2020.  *Id.* ¶ 12.  Plaintiffs allege that they purchased their SHIELD devices for "personal use" to stream video games from their PCs to their TVs.  *Id.* ¶¶ 11-12.

Plaintiffs say nothing about their personal experiences with SHIELD and/or GameStream.  Nor do they say what PCs they used for GameStream, what PC games they streamed, or that they in fact used GameStream.  The Complaint is silent on whether Plaintiffs downloaded the mid-February 2023 "NVIDIA Games app" update, the alleged "forced" update at the end of March 2023, or any update at all.  But the Complaint alleges that, after NVIDIA ended the free GameStream service, users must choose between "us[ing] the inferior Steam Link service exclusively and/or pay[ing] for NVIDIA's GeForce NOW cloud-based service to receive similar

---

[1] "4K" is a metric of display resolution.  Latency refers to how quickly data travels from its origin to its destination; this speed can be assessed with respect to frames per second or fps.

FENWICK & WEST LLP
ATTORNEYS AT LAW

stream quality." *Id.* ¶ 9.  Citing internet articles, Plaintiffs contend "Steam Link is not an adequate substitute for GameStream" because "games streamed over Steam Link have high latency, which is undesirable to gamers" and GeForce Now "sessions are time-limited" and "cost $20 per month to stream in 4K resolution." *Id.* ¶¶ 7-8.  Plaintiffs do not allege their SHIELD devices stopped working, were damaged or otherwise performed poorly, or could not stream games from their PCs. Nor do they say whether they used Steam Link or GeForce Now.

### III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) should be granted where there is either a lack of a legally cognizable theory or the absence of sufficient facts alleged under a cognizable theory.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).  To survive a motion to dismiss, a complaint must present factual allegations sufficient to raise a right to relief beyond mere speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8.  The Complaint must include enough facts to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 547.  Allegations that are "merely consistent" with wrongful conduct are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, 517 F. Supp. 3d 981, 985 (N.D. Cal. 2021) (Freeman, J.) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

### IV.    ARGUMENT

### A.    The Common-Law Claims (First and Second Causes of Action) Fail Because the Complaint Does Not Specify the State Law on Which They Are Based.

Plaintiffs do not specify which state's laws they invoke for their common-law claims, trespass to chattels and breach of implied warranty for particular purpose (first and second causes of action).  "[F]ailure to allege which state law governs a common law claim is grounds for dismissal," *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016) (Freeman, J.), because, "until [p]laintiffs indicate which States' laws support their claim, the [c]ourt cannot assess whether the claim has been adequately plead," *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008).

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Accord In re Nexus 6P Prods. Liability Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) (Freeman, J.).  Accordingly, Plaintiffs' trespass to chattels and breach of implied warranty claims fail because the Court should "refrain from guessing what state law or laws Plaintiffs are using as the basis" for their common-law claims.  *SRAM*, 580 F. Supp. 2d at 910.  But if these claims are not dismissed at the threshold, then NVIDIA assumes for purposes of this Motion only that Plaintiffs bring their common-law claims under the laws of California, the forum state.

**B.      Plaintiffs Fail to State a Claim for Trespass to Chattels (First Cause of Action).**

To establish a trespass to chattels claim under California law, a plaintiff must allege "plaintiff's possession of the property; defendant's intentional interference with the plaintiff's use of the property; lack of plaintiff's consent; and damages."  *Ferrari v. Mercedes Benz USA, LLC*, No. 17-cv-00018-YGR, 2017 WL 3115198, at *8 (N.D. Cal. July 21, 2017).

**1.      Plaintiffs Plead No Exclusive Property Interest in GameStream.**

The trespass to chattels claim should be dismissed because Plaintiffs plead no cognizable property interest in the continued enjoyment of GameStream, a *free* software service provided to users and controlled by NVIDIA.  A common-law property interest exists only if it is "capable of *exclusive* possession or control" and if "the putative owner" has "established a legitimate claim to *exclusivity*."  *G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.*, 958 F.2d 896, 903 (9th Cir. 1992) (emphases added).  Plaintiffs allege no claim to exclusive possession or control of the free GameStream service.

California courts reject claims to exclusive possession or control of digital or data services comparable to GameStream.  In *Taylor v. Google LLC*, the court dismissed the conversion claim[2] against Google for an alleged interference with plaintiffs' cellular data allowances.  No. 20-cv-

---

[2] California courts consider a trespass to chattels claim a "little brother" to a conversion claim, *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350 (2003), which also requires as an element of the claim "plaintiff's ownership or right to possession of personal property," *Taylor*, 2021 WL 4503459, at *4.

FENWICK & WEST LLP
ATTORNEYS AT LAW

07956-VKD, 2021 WL 4503459 (N.D. Cal. Oct. 1, 2021).  The *Taylor* court held that plaintiffs alleged no "exclusive possession" over those data allowances because their "right of access" to the cellular data network "is not exclusive of others' right of access to the same network, and no subscriber possesses or controls a particular byte or bytes of data in the network."  *Id.*, at *6. Similarly, in *K3b, Inc. v. Collectors Universe*, the court rejected plaintiff's theory that defendant was liable for "conversion" of an internet forum by changing "the underlying website software that controls what is seen by a visitor to the website."  No. 30-2016-00856615, 2016 Cal. Super. LEXIS 22556, at *2 (Cal. Super. Ct. Nov. 17, 2016).  Although the complaint claimed that plaintiff "has exclusive rights to the Forums," it acknowledged that defendant "made changes to" and "could exercise control over the software upon which the Forums were run"—a "factual allegation [that] overrides the legal conclusion of exclusive ownership," such that plaintiff could not establish "exclusive possession and control over the Forums."  *Id.*, at *3.

The Complaint fails to show Plaintiffs' "legitimate claim to exclusivity" over GameStream. Plaintiffs' "right of access" to the free GameStream service was not "exclusive of others' right of access to the same" service.  *Taylor*, 2021 WL 4503459, *5-6.  Rather, GameStream was publicly available through the separate NVIDIA Games application to others who used the "millions of [SHIELD] devices [sold] to consumers nationwide."  Compl. ¶ 36.  The Complaint contends, without support, that GameStream was a "core feature" of SHIELD devices.  *Id.* ¶ 20.  But the factual allegations show that NVIDIA "made changes to" and "could exercise control over" GameStream, including by discontinuing it, *see id.* ¶¶ 5, 29, which "overrides" Plaintiffs' conclusory allegations that they had any cognizable property interest in GameStream, *see K3b*, 2016 Cal. Super. LEXIS 22556, at *2-3.  At most, the Complaint alleges—and could allege—only that Plaintiffs, like other users, had the right to access GameStream akin to that of a gratuitous, revocable, and nonexclusive licensee (which is in fact the case, *see* Dkt. No. 21-2 at 1 ("personal, revocable, non-exclusive, limited license")).  That is not a cognizable property interest.  *See Mary's Kitchen v. City of Orange*, No. 8:21-cv-01483-DOC-JDE, 2021 WL 6103368, at *9 (C.D. Cal. Nov. 2, 2021) ("The Ninth Circuit has made clear that a license revocable at will does not create a

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   protected property interest.").  Because the Complaint fails to allege facts that push the claim over

2   the line to plausibility, it must be dismissed.

3            **2.      Plaintiffs Fail to Allege Injury.**

4            Plaintiffs' failure to allege that they had ever used GameStream means they also fail to

5   allege the essential element that they were damaged by its discontinuation.  *Wade v. OnePlus USA*

6   *Corp.*, No. 21-cv-05811-BLF, 2022 WL 3549590, at *1-2 (N.D. Cal. Aug. 17, 2022) (because

7   plaintiffs failed to allege that they personally experienced reduced performance on their

8   smartphones from the smartphone's settings, they "fail[ed] to allege injury," which "renders the

9   claim for trespass to chattels subject to dismissal") (Freeman, J.).

10           Plaintiffs also allege no cognizable impairment of their purported chattels, i.e., the SHIELD

11  devices.  *See* Compl. ¶¶ 11-12.  For a trespass to a computer system or other similar devices, a

12  plaintiff must allege that defendant "(1) caused physical damage to the personal property, (2)

13  impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the

14  use of personal property for a substantial time."  *Fields v. Wise Media, LLC*, No. C 12-05160 WHA,

15  2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013).  Plaintiffs allege no facts to show that NVIDIA

16  caused any of these harms to their SHIELD devices.  *See Arrieta v. Cnty. of Kern*, No. 1:14-cv-

17  00400-LJO-JLT, 2014 WL 2801048, at *12-13 (E.D. Cal. June 19, 2014) (dismissing trespass to

18  chattels claim because plaintiffs fail to allege "any damages that may have resulted from the

19  alleged" interference).  As Plaintiffs concede, their SHIELD devices still stream content, including

20  video games.  *See, e.g.*, Compl. at 7, image.  And there are at least two PC game streaming

21  alternatives, neither of which Plaintiffs say they tried and found unworkable.  *Id.* ¶¶ 7-8; Melcher

22  Decl. Exs. 2-3.  Accordingly, there is no actionable trespass to Plaintiffs' chattels by NVIDIA,

23  because the tort of trespass does not encompass an alleged trespass that "neither damages the

24  recipient computer system nor impairs its functioning."  *Fields*, 2013 WL 5340490, at *4 (quoting

25  *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003)); *cf. Sapan v. Auth. Tax Servs., Ltd. Liab. Co.*,

26  No. 13cv2782 JAH (JLB), 2014 WL 12493282, at *3 (S.D. Cal. July 15, 2014) (dismissing trespass

27  to chattels claim where plaintiff failed to plead "specific, quantifiable damages" from defendant's

28  alleged actions).

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

FENWICK & WEST LLP
ATTORNEYS AT LAW

### C.   Plaintiffs Fail to State a Claim for Breach of the Implied Warranty of Fitness for a Particular Purpose (Second Cause of Action).

#### 1.   The Implied Warranty Claim Fails for Lack of Privity of Contract.

Plaintiffs' implied warranty claim should be dismissed at the outset because they allege no privity of contract with NVIDIA.  Under California law, "[t]he general rule is that privity of contract is required in an action for . . . implied warranty." *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 754 (N.D. Cal. Dec. 10, 2021) (citation omitted); *Broge v. ALN Int'l, Inc.*, Case No. 17-cv-07131-BLF, 2018 WL 2197524, at *4 (N.D. Cal. May 14, 2018).  "A buyer and seller stand in privity only if they are in adjoining links of the distribution chain." *Watkins*, 574 F. Supp. 3d at 754 (citation omitted).  As the Ninth Circuit held, "an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Garcia v. Doe White Trucking Co.*, Case No. 20- cv-00134-SI, 2020 WL 3061784, at *2 (N.D. Cal. Jun. 9, 2020).  Here, Plaintiffs allegedly purchased their SHIELD devices from Best Buy, a third-party retailer, and not NVIDIA.  Compl. ¶¶ 11-12.  Thus, the parties are not "in adjoining links of the distribution chain." *Watkins*, 574 F. Supp. 3d at 754 (citation omitted).

Although the Complaint alleges that Plaintiffs were "in privity with Defendant as a result of Defendant's express written warranties," Compl. ¶ 51, no such "express written warranties" are identified in the Complaint—making this a legal conclusion, unsupported by facts that cannot remedy the lack of privity.  *Nexus*, 293 F. Supp. 3d at 920 ("conclusory" allegation of privity of contract "does not plausibly allege privity").  Likewise, the Complaint's "bald [and] conclusory" allegation that NVIDIA "act[ed] in concert" with unspecified "other agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers that were direct sellers and Defendant's authorized retail stores" "simply recite[s] the elements of a cause of action" and fails to "plausibly suggest an entitlement to relief." *Thorpe Design, Inc. v. Viking Corp.*, Case No. 15-cv-03324-EDL, 2015 WL 5440792, at *3 (N.D. Cal. Sep. 15, 2015) (citation omitted).  Plaintiffs' apparent attempt to invoke the third-party beneficiary exception falls flat because Plaintiffs cannot be implied beneficiaries "simply by virtue of their status as end users of a product." *Watkins*, 574 F. Supp. 3d at 755-56.

### 2.      Plaintiffs Fail to Identify Any "Particular Purpose."

The Complaint also fails to plead any particular purpose.  To state a claim for breach of the implied warranty of fitness for a particular purpose, Plaintiffs must establish that "(1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment." *T&M Solar and Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 876-77 (N.D. Cal. 2015) (citation omitted).

Plaintiffs "must not only allege the 'particular purpose' of [the product] but also distinguish it from [the product's] 'ordinary purpose.'" *G&H Diversified Mfg. LP v. Regreen Techs., Inc.*, No. SACV 21-00062-CJC(JDEx), 2021 WL 6618662, at *4 (C.D. Cal. Sep. 20, 2021).  A "particular purpose" differs from the "ordinary purpose" "in that it envisages a specific use by the buyer which is peculiar to the nature of his business," "whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question."  *Smith v. LG Elecs. U.S.A., Inc.*, No. C 14–03824 WHA, 2014 WL 989742, at *7 (N.D. Cal. Mar. 11, 2014) (citation omitted).

Plaintiffs nowhere identify a "particular purpose" that is "peculiar to the nature of [their] business."  *See* Comp. ¶¶ 48-56.  To the contrary, the Complaint claims that "eliminat[ing] access to the GameStream feature . . . rendered the [SHIELD] devices unmerchantable and unfit for their intended purpose."  *Id.* ¶ 52.  Thus, this case is like *Corzine v. Whirlpool Corp.*, where this Court dismissed a claim relating to a refrigerator for breach of an implied warranty of fitness for a particular purpose, because the complaint did not allege "any particular purpose different from the ordinary purpose of a refrigerator."  No. 15-cv-05764-BLF, 2016 WL 6476172, at *3 (N.D. Cal. Nov. 2, 2016) (Freeman, J.); *Marcus v. Apple Inc.*, No. C 14–03824 WHA, 2015 WL 151489, at *8-9 (N.D. Cal. Jan. 8, 2015) (dismissing claim for breach of implied warranty of fitness for a particular purpose, as plaintiffs did not allege that laptops were used for "any purpose other than their ordinary use as 'a portable device'").

FENWICK & WEST LLP
ATTORNEYS AT LAW

In addition, the Complaint conflates the elements of a claim for an implied warranty of fitness for a particular purpose with those of claims for breach of the implied warranty of merchantability and the covenant of good faith and fair dealing, *see, e.g.*, Compl. ¶¶ 52-55, further depriving NVIDIA of "fair notice" of Plaintiffs' precise claim. *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1005 (N.D. Cal. 2021) (Freeman, J.). In any event, the Complaint does not assert either of those two additional claims or plead the necessary facts for them. For example, "'a breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use.'" *Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK, 2019 WL 1493356, at 16 (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)). Here, the Complaint does not allege that, following the update, SHIELD devices lack even the most basic degree of fitness for ordinary use. Instead, it expressly acknowledges that users can still stream content via the SHIELD devices, including PC games using the GeForce Now and Steam Link services. Compl. ¶¶ 6, 8; *see* Melcher Decl. Exs. 2-3. The Complaint also makes the stray accusation that "Defendant's conduct in eliminating access to the GameStream feature is a breach of Defendant's obligation of good faith and fair dealing," Compl. ¶ 53, which has nothing to do with a breach of implied warranty claim. In any event, this conclusory allegation is unsupported, does not allege or attach the contract giving rise to such duty, and should be ignored. *Protégé*, 517 F. Supp. 3d at 985.

Finally, because Plaintiffs do not plead privity or a particular purpose, they necessarily fail to show other elements of their warranty claim. For instance, the Complaint does not allege that NVIDIA "*at the time of contracting* [had] reason to know of [Plaintiffs'] particular purpose." *T&M Solar*, 83 F. Supp. 3d at 876-77 (emphasis added). Instead, the Complaint alleges only that NVIDIA had "reasonable and adequate notice of Plaintiffs and the Class Members' claims for breach of implied warranty" *after* "consumer complaints" about the end of service became "publicly available." Compl. ¶ 55. Moreover, Plaintiffs nowhere allege that they "relie[d] on [NVIDIA]'s skill or judgment to select or furnish goods suitable" for their unidentified "particular purpose," nor do they allege that NVIDIA "kn[e]w [Plaintiffs were] relying on [its] skill and judgment." *T&M Solar*, 83 F. Supp. 3d at 876-77 (citation omitted). Accordingly, Plaintiffs have not alleged the

"requisite elements" of their implied warranty claim, which must be dismissed.  *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *15 (N.D. Cal. Aug. 20, 2015).

### D.    Plaintiffs Cannot Assert Multiple State Consumer Protection Claims on Behalf of the Multi-State Class (Third Cause of Action).

"Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured." *So v. HP, Inc.*, No. 22-cv-02327-BLF, 2022 WL 16925965, at *6 (N.D. Cal. Nov. 14, 2022) (Freeman, J.) (dismissing non-California law claims where plaintiff resides in and was injured in California) (citation omitted).  Plaintiffs here reside in and were allegedly injured in California and New Mexico.  Compl. ¶¶ 11-12.  Therefore, Plaintiffs' allegations for violations under other state consumer protection statutes should be dismissed.

In addition, the Complaint does not recite sufficient facts to plead violations of other state consumer protection statutes.  They purport to assert claims for violations of state consumer protection statutes on behalf of the "Multi-State Class," *id.* at 15, which includes "[a]ll persons who purchased, in the State of California or *any state with similar laws*, new [SHIELD] devices," including "but [] not limited to" laws under more than 30 states, *id.* ¶ 31, n.28 (emphasis added).  These vague allegations fail under Rule 8's notice pleading standard.  The Complaint merely includes a laundry list footnote of purportedly applicable statutes, does not recite the legal elements of any specific claim on behalf of either Plaintiff, and lacks "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Browning*, 549 F. Supp. 3d at 1005 (citation omitted); *see also* Compl. ¶¶ 57-64.

Additionally, "[c]hoice of law requires determining the *single* state's substantive law that applies to a particular plaintiff's claims," *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978, 988 (N.D. Cal. 2022) (Freeman, J.), because "the very purpose of choice-of-law rules is to pick a jurisdiction whose laws will substantively govern," *Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC, 2020 WL 6743912, at *10 (N.D. Cal. Nov. 17, 2020).  Plaintiff Ho already asserts claims under California's consumer protection statutes. *See* Compl. ¶¶ 57-90.  Thus, "under choice of law

1   principles, [he] cannot bring California and [another state's] [consumer protection] claims

2   simultaneously." *Cimoli*, 587 F. Supp. 3d at 989.

3        Finally, Plaintiff Davenport has not asserted any claim under any state consumer protection

4   statute.  Even if he had, for the reasons discussed in Sections IV.E and IV.F below, any such claim

5   by Plaintiff Davenport would suffer from the same core defects as the California consumer

6   protection claims and should be dismissed.

7        **E.**    **Plaintiff Ho Cannot State a CLRA Claim (Fifth Cause of Action).**

8        Claims for misleading advertising or misrepresentation under the CLRA, like Plaintiff Ho's

9   CLRA claim, are "grounded in fraud" and must be pled with specificity under Rule 9(b).  *Kearns*

10  *v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (plaintiff's CLRA claim was subject to

11  Rule 9(b) where he alleges that defendant misrepresented its product); *Davidson v. Kimberly-Clark*

12  *Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).  To satisfy Rule 9(b), the claim must include "the who,

13  what, when, where, and how" of the alleged misconduct.  *Kearns*, 567 F.3d at 1124 (citations

14  omitted).

15       To bring a plausible claim for fraud under the CLRA, Plaintiff Ho must allege facts, with

16  specificity, supporting two essential elements: (1) that NVIDIA made a deceptive

17  misrepresentation about the SHIELD devices, and (2) that Plaintiff Ho purchased his SHIELD

18  devices in reliance on that misrepresentation.  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992,

19  1003 (N.D. Cal. 2009).  The Complaint fails on both accounts.

20       First, a deceptive misrepresentation is an essential element of a CLRA claim.  Cal. Civ.

21  Code § 1770(a)(5) ("*Representing* that goods or services have sponsorship, approval,

22  characteristics, ingredients, uses, benefits, or quantities that they do not have"), § 1770(a)(9)

23  ("*Advertising* goods or services with intent not to sell them as advertised"), § 1770(a)(16)

24  ("*Representing* that the subject of a transaction has been supplied in accordance with a previous

25  representation when it has not") (emphases added); *Marolda*, 672 F. Supp. 2d at 1003.  The

26  Complaint contends "[t]he gravamen of this action" is that NVIDIA falsely "advertised, marketed

27  and sold SHIELD devices as including the GameStream feature."  Compl. ¶ 1.  As an initial matter,

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  Plaintiff Ho fails to identify any advertising or marketing materials about his SHIELD devices that

2  touted GameStream as a feature.  This failure alone dooms his claim under Rule 9(b) standard.

3  Even if Plaintiff Ho had identified any such advertising or materials about GameStream,

4  the Complaint does not suggest that NVIDIA's statements were "false or deceptive when made" or

5  when Plaintiff Ho bought his SHIELD devices.  The Ninth Circuit's decision in *Sateriale v. R.J.*

6  *Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012), is dispositive.  There, plaintiffs alleged that

7  the defendant misrepresented the terms of its customer rewards program by terminating the

8  program, a decision the company announced months in advance.  *Id.* at 783-84.  The Ninth Circuit

9  affirmed the dismissal of the CLRA and UCL claims because plaintiffs nowhere asserted that the

10  representations at issue "were false or deceptive when made"; in fact, defendant honored the

11  program for years before termination.  *Id.* at 794; *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp.

12  2d 1156, 1163 (N.D. Cal. 2011) ("[A] representation will not violate the CLRA if the defendant did

13  not know, or have reason to know, of the facts that rendered the representation misleading at the

14  time it was made.").

15  As in *Sateriale*, and as the Complaint acknowledges, after almost 10 years of providing

16  GameStream for free, NVIDIA publicly announced its decision to discontinue GameStream with

17  months of advance notice to users.  Compl. ¶¶ 22, 29.  The Complaint not only fails to allege any

18  false or misleading statements by NVIDIA, it shows that NVIDIA was open and honest with its

19  users: NVIDIA provided the free GameStream software service to SHIELD users for many years;

20  NVIDIA decided to discontinue it; NVIDIA announced its decision; and it discontinued the service

21  months after the announcement, as promised.  *Id.* ¶¶ 21-22, 29.  NVIDIA made no

22  misrepresentation about GameStream's availability, and none is alleged in the Complaint.  The

23  Complaint also alleges no statement that was false when made or seen by Plaintiffs, at most alleging

24  only that circumstances later changed.

25  Second, the CLRA claim fails for lack of reliance, "a required element" of a CLRA claim.

26  *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL 2125004, at *4 (N.D. Cal.

27  May 6, 2015) (Freeman, J.).  Plaintiff Ho pleads no actionable misrepresentations—much less one

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

that he saw and relied upon in connection with his 2020 purchases.  He thus cannot "articulate a plausible theory of reliance, explaining what representations []he relied upon and why." *Id.*

Because Plaintiff Ho pleads no misrepresentation by NVIDIA and no reliance, he cannot meet minimum pleading requirements, much less satisfy his heightened burden under Rule 9(b). His CLRA claim should be dismissed.  *Shaouli v. Saks Fifth Ave.*, No. CV 14-09590-AB (JCx), 2015 WL 13917124, at *8 (C.D. Cal. Apr. 2, 2015) (dismissing CLRA claim because complaint alleges no representations or advertisements regarding goods purchased).

### F.     Plaintiff Ho Pleads No Unfair or Unlawful Conduct under the UCL (Fourth Cause of Action).

California's UCL prohibits three separate types of unfair competition: "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. 2021) (Freeman, J.).  "[A] plaintiff's allegations must show that a defendant's conduct violates one of these three 'prongs.'"  *Google Assistant*, 546 F. Supp. 3d. at 970.  Plaintiff Ho asserts the "unlawful" prong, based on an alleged violation of the CLRA, and the "unfair" prong, but does not raise any allegations under the "fraudulent" prong. Both asserted prongs of Plaintiff Ho's UCL claim fail.

### 1.     Because the CLRA Claim Fails, the Complaint Pleads No "Unlawfulness."

The unlawful prong of the UCL "borrows violations of other laws and treats them as 'unlawful practices' that the unfair competition law makes independently actionable."  *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (cleaned up); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022).  Plaintiff Ho's claim under the unlawful prong is based on an alleged violation of the CLRA, which fails for the reasons discussed above.  *Supra* § IV.E.  Because "the predicate claim[] fail[s], the UCL claim also fails." *Sidhu v. Bayer Healthcare Pharm. Inc.*, No. 22-cv-01603-BLF, 2022 WL 17170159, at *8-9 (N.D. Cal. Nov. 22, 2022) (Freeman, J.) (citation omitted); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021).

Fenwick & West LLP
Attorneys at Law

FENWICK & WEST LLP
ATTORNEYS AT LAW

### 2.     The Complaint Fails to Allege "Unfairness."

Plaintiff Ho also asserts a claim under the unfair prong of the UCL.  Compl. ¶ 69.  But where a "claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs do not survive." *Sidhu*, 2022 WL 17170159, at *9 (cleaned up).  Here, the unfair prong, as pled, "is based on the same conduct underlying" the unlawful prong of the UCL claim and the CLRA claim. *Id.*, at *24; *compare* Compl. ¶ 70 (alleging that NVIDIA's conduct "*is unfair* in that Defendant intentionally interfered with Plaintiff's and Class Members' use and enjoyment of their [SHIELD] devices") (emphasis added), *with id.* ¶ 82 (alleging that NVIDIA *violated the CLRA* because it "intentionally interfered with Plaintiff's and the California Subclass Members' use and enjoyment of their [SHIELD] devices") (emphasis added), *and id.* ¶ 68 (alleging that NVIDIA "violated the unlawful prong" through its "violation of the [CLRA]").  Accordingly, the unfair prong should be dismissed along with the unlawful prong and CLRA claim.

Even were it not entirely duplicative, the unfair prong still fails because the Complaint alleges no facts to show unfairness.  Instead, the Complaint recites legal conclusions that parrot different tests courts have used to determine unfairness.  For instance, the Complaint alleges that NVIDIA's conduct "was substantially injurious to consumers, offended public policy, and was immoral, unethical, oppressive, and unscrupulous," Compl. ¶ 70, but "does not point to a single specific factual allegation in the [c]omplaint to support liability," *Wahl v. Yahoo! Inc.*, No. 17-cv-02745-BLF, 2017 WL 4098884, at *2 (N.D. Cal. Sep. 15, 2017).  There is nothing "unfair" in discontinuing a free service one has no legal obligation to provide.  Termination of products and services occurs regularly in the normal flow of business.  And, as explained above, there is no allegation that NVIDIA misled users into believing they would have perpetual access to GameStream. *Supra* IV.E.  Consequently, Plaintiff Ho fails to "state[] a plausible claim for a violation of the UCL under any of the [] tests." *Wahl v. Yahoo! Inc.*, 2017 WL 4098884, at *2.

### G.     Plaintiffs Lack Standing to Seek Injunctive Relief.

Plaintiffs have no standing to seek injunctive relief. *See* Compl. ¶¶ 56, 64, 75, 87.  "A plaintiff may establish standing to pursue injunctive relief against false labeling or advertising by

alleging that he desires to purchase the product at issue in the future" and a threat of future harm in connection with that purchase. *Forrett v. Gourmet Nut, Inc.*, No. 22-cv-02045-BLF, 2022 WL 6768217, at *5 (N.D. Cal. Oct. 11, 2022) (Freeman, J.).  But when, as here, Plaintiffs do not "allege a desire to purchase the product [they] previously purchased (or, indeed, any of the Products [made by defendant]) in the future," they necessarily lack standing to pursue injunctive relief.  *Perez v. Bath & Body Works, LLC*, No. 21-cv-05606-BLF, 2022 WL 2756670, at *8 (N.D. Cal. July 14, 2022).

In seeking an injunction under the UCL, the Complaint alleges that "[t]he refusal to reinstate access to GameStream on [SHIELD] devices constitutes ongoing violations of the UCL" because "Plaintiff Ho and the California Subclass Members will continue to . . . not receive access to a feature that they paid for."  Compl. ¶ 75.  As an initial matter, Plaintiff Ho has no claim under the UCL.  *See supra* § IV.F.  Moreover, as the Complaint admits, Plaintiff Ho did not pay for GameStream, which was a complementary service separately offered in the NVIDIA Games application.  *Id.* ¶¶ 1, 21.  Thus, the Court should deny the request for injunctive relief.

## V.    CONCLUSION

For all these reasons, if the Court does not compel this case to arbitration, it should grant NVIDIA's Motion to Dismiss and dismiss the Complaint in its entirety.

Dated:   June 26, 2023                               FENWICK & WEST LLP


By: */s/ Laurence F. Pulgram*
    Laurence F. Pulgram
    Molly R. Melcher
    David W. Feder
    Y. Monica Chan
    Nicholas A. Santos

    Attorneys for Defendant
    NVIDIA CORPORATION